91 So.2d 99 (1956)
Alphonse S. CAMUS, Plaintiff-Appellant,
v.
George BIENVENUE, Jr., et al., Defendant-Appellee.
No. 4287.
Court of Appeal of Louisiana, First Circuit.
November 26, 1956.
*100 Percy & Macmurdo, Baton Rouge, for appellant.
Cadwallader & Dameron, Jos. A. Loret, Baton Rouge, for appellee.
TATE, Judge.
Defendants admit liability for damages caused to plaintiff by the automobile accident herein. Plaintiff appeals from, as inadequate, the award to him of $3,500 in all for personal injuries and property damage. By answer to the appeal, defendant prays for reduction of the award.
1. Personal injuries.
Plaintiff's personal injuries sustained in the accident of July 26, 1954, consisted of five fractured ribs, a severe contusion and swelling of his right knee, an abrasion on his forehead, and a contusion of his breast bone.
The broken ribs caused him severe pain for a week or so. His chest was immediately strapped, and the doctor told him to stay in bed for two weeks in order to avoid intensifying the pain and to speed his recovery. The knee injury also caused plaintiff pain and discomfort for approximately two months.
Plaintiff's personal physician estimated that Camus was fairly uncomfortable for about six weeks and completely disabled from farming for a period of about three months, although ambulatory within a month after the accident. This was confirmed by defendants' medical witness.
The only apparent residual is very occasional discomfort in the chest and knee.
The District Court's net award to Camus for these personal injuries was $2,260.30 (the residue of $3,500, after deduction of special damages allowed.) We find this award neither manifestly insufficient not manifestly excessive, Rhymes v. Guidry, La.App. 1 Cir., 84 So.2d 634 (Syllabus 2); Anagnosti v. Toye Brothers' Yellow Cab Co., La.App., 56 So.2d 166, recognizing that the award of such damages is of necessity somewhat arbitrary and must depend to a large extent upon the facts and circumstances of each case.
Plaintiff was seen by the doctor several times during the ten days after the accident and incurred a gross medical bill of $27.50. This item of special damages, together with $6.60 for loss of tools, are not contested by defendant.
2. Damages to automobile.
Defendant, however, contests the allowance of $440.60 for damage caused plaintiff's automobile, averring such damage was insufficiently proven. Although plaintiff claimed a far larger amount, the only proof offered is his own testimony that he was offered $550 based upon three estimates of damage by his collision insurer in adjustment of the loss, less net salvage value received by him of $109.40. (He didn't accept this offer.)
As we stated recently, disallowing a claim for special damages proven only by plaintiff's testimony based upon his memory, when corroborative evidence was available, "plaintiff could have easily brought corroborative evidence * * * [in the present case, the estimates of damage] but failed to do so, Jenkins v. A. R. Blossman, Inc., La.App. 1 Cir., 60 So.2d 131; Scott v. Davis, La.App., 56 So.2d 187. Thus unsupported by such available records his testimony was more in the nature of an estimate than proof, Horrell v. Gulf & Valley Cotton Oil Co., Inc., 16 La.App. 90, 133 So. 394," Rhymes v. Guidry, 84 So.2d 634, at page 637.
However, as in Lavergne v. Indemnity Insurance Company, La.App., 84 So.2d 617, although we would be justified in dismissing *101 the unproven demand for such damage, we will exercise our discretion under Article 906, Code of Practice, in the interest of justice by remanding this case to receive evidence of the loss occasioned plaintiff by damage to or destruction of his 1950 Mercury, because it is undenied that the automobile was severely damaged in the accident, although plaintiff failed to prove properly the exact amount of such damage.
Since plaintiff does not question that portion of the decree which limited his recovery for such damages to $440.60, the District Court's judgment rejecting his demand for amounts in excess of this has become final, and plaintiff's recovery on remand will be limited so as not to exceed this amount previously awarded below.
3. Loss of carpet grass seed crop.
Defendants do not dispute that a farmer may recover from a tort-feasor the loss of profits from a crop that he is unable to harvest due to personal injuries received through the negligence of the tortfeasor, Rhymes v. Guidry, La.App. 1 Cir., 84 So.2d 634, Alengi v. Hartford Accident & Indemnity Co., La.App., 167 So. 130; Id., La.App., 162 So. 218; but they urge that the allowance of $765.00 herein for loss of a crop of carpet grass seed was not properly or sufficiently proved.
The District Court correctly computed the damages as the estimated crop unharvested due to plaintiff's injuries (less the salvaged share), sold at the market price prevailing when ready for harvest; from which gross price were deducted the estimated expenses which would have been incurred in harvesting the crop. Dubois v. Phillips Petroleum Co., 221 La. 161, 59 So. 2d 107, Rhymes v. Guidry, La.App. 1 Cir., 84 So.2d 634.
Defendants argue that this award should be disallowed since the figures upon which based are supplied solely by plaintiff Camus' own testimony. Camus was a retired county agricultural agent of many years' experience and an experienced farmer holding a university degree in agriculture. The probative value of his testimony as an agricultural expert cannot be denied. On the other hand, neither can it be denied that as a matter of policy it is preferable to have more objective corroboration (if available) as to the value of damages besides the testimony of the claimant himself.
It can be argued with some force that no one besides Camus himself could testify with expert knowledge based upon an inspection and evaluation of the entire carpet grass seed crop at the time it was ready for harvest, and that some objective corroboration is furnished by the figure on Camus' 1954 income tax return of $1,400 proceeds from carpet grass seed, which he testified were the proceeds of an unusually late 1953 seed crop. Perhaps if this were the circumstance herein, we would accept this argument.
But Camus' own testimony indicates that at least partial corroboration is available in the testimony of a Mr. Ussury, a contractor, who harvested (according to Camus) 490 pounds after the crop had been mostly lost, but who saw the stand of carpet grass after Mr. Camus' injury and when it was still available to make a good crop. Presumably, he could corroborate plaintiff as to the apparent crop, to the extent at least of his own observation; and he could certainly testify as to exactly how much was salvaged, and the market price. Probably, Camus' hired help could to some extent verify the extent and disposition of the 1954 carpet grass seed crop.
We do feel that the medical testimony of Camus' disability and the testimony of a neighbor corroborating Camus' that no skilled help was available to run the combine during that time, when the crop of seed needed to be harvested, adequately proves that plaintiff was unable himself or through help to harvest the seed, and is entitled to recover such damages as he suffered in this respect.
*102 Plaintiff further produced proof that his mechanically skilled farmhand was injured and totally disabled at the same time (and by the same wreck); which is relevant proof that plaintiff was unable to minimize the loss of his crop by securing competent help in his stead to run his combine and harvest the crop, (not, as defendants argue, in an attempt to allow Camus to recover damages for injuries sustained by the servant, not legally recoverable by Camus.)
Because plaintiff has proved he sustained damage in this regard, and has offered detailed testimony as to this loss, accepted by the trial court, but found incompetent in this Court as proof, in the interests of justice we will likewise remand this portion of the claim for further proof as to the amount of the loss, Article 906, Code of Practice, J. R. Watkins Co. v. Brumfield, La.App., 1 Cir., 86 So.2d 263, 266.
4. Estimated loss of cattle profits disallowed.
Plaintiff appeals the District Court's refusal to allow him his claim of $606.00 for loss of weight on calves, due to his accident-caused inability to spray same at the proper time, and for $1,575 for their failure to gain weight due to his inability due to injuries to continue "creep-feeding" them (i. e., to maintain them on an intensive feeding program.)
The only testimony offered in support of these claims is plaintiff's uncorroborated estimate that such calves lost 25¢ a day in value for the 26 days of disability due to non-spraying during fly infestation; and failed to gain 3 pounds a day during that period which they otherwise would have gained under plaintiff's intensified feeding program.
The District Court correctly disallowed this claim as not proved with sufficient certainty, and with specific records and testimony as to this particular herd of cattle, instead of uncorroborated general estimates made by plaintiff himself, Rhymes v. Guidry, 84 So.2d 634.[1] Further, plaintiff's testimony indicates that he did not attempt to minimize these damages by following up information that help was available from a hired hand who had worked for plaintiff for twenty years and who was at least competent to perform these non-mechanically-skilled functions of feeding and spraying the cattle. (Plaintiff's alleged reason was the personal differences he had had with his former servant.)
5. Loss upon hay crop.
For similar reasons, claim made by plaintiff for loss upon his hay crop was correctly disallowed by the District Court. Plaintiff without corroboration testified he had lost 30¢ per bale on 3000 bales of hay, by failing to harvest same when the protein value was highest. And he testified it cost him $350 more to harvest his hay crop by having to hire help and machinery instead of using his own labor and combine, but on cross-examination admitted he could not tell how many days' labor he had hired and how much he had spent without referring to his records, which he had not brought to Court with him.
Decree.
For the above and foregoing reasons, the judgment of the District Court is affirmed insofar as it awarded plaintiff Two Thousand Two Hundred Ninety-Four and *103 40/100 ($2,294.40) Dollars for personal injuries sustained, medical expenses, and loss of tools; it is further affirmed insofar as it dismissed plaintiff's claim for damages arising from loss in value of his cattle and hay crop and for extra expenses incurred in harvesting the hay; and it is annulled insofar as it awarded plaintiff damages for injury to or destruction of his 1950 Mercury automobile and for losses with his 1954 carpet grass seed crop, but remanded for the restricted purpose of receiving evidence to establish the quantum of damages sustained by damage to said automobile (not to exceed $440.60) and by losses in said carpet grass seed crop incurred by reason of plaintiff's disability caused by the accident.
Affirmed in part; remanded in part.
NOTES
[1] We may further add that the sales slips for sales of cattle educed from the plaintiff on cross-examination, do not indicate any great discrepancy between the weights of those calves sold in the fall of 1953 (before the accident), and those sold in the fall of 1954, after the accident. For instance, Sales Slip No. 66672, part of Exhibit D-4, dated October 26, 1953, shows a sale of 18 calves at an average weight of 423 lbs. per calf; Sales Slip No. 775599, part of Exhibit D-4, dated November 15, 1954, shows the sale of 21 calves at an average weight of 419 lbs.